PHILIP H. FOLGER *vs.* THOMAS B. FIELD & others.

The act of 1847, *c.* 218, "concerning unenclosed lands in the island of Nantucket," refers to lands divided off and held by classes of proprietors, severed from the lands held in common by the general proprietary, and confers upon the former the powers of proprietors of general fields, according to the provisions of the forty-third chapter of the revised statutes, one of which is to make regulations concerning the depasturing of their lands; and if the proprietors adopt a regulation permitting sheep to run at large upon their unenclosed lands, such sheep are not liable to be taken up and impounded, under the provisions of the Rev. Sts. *c.* 19, § 22, for going at large, without a keeper, upon common and unimproved lands.

THE facts of the case are stated in the opinion of the court.

*T. G. Coffin* and *J. H. Clifford*, for the plaintiff.

*C. Bunker*, for the defendants.

FLETCHER, J. This action was brought for taking three hundred sheep belonging to the plaintiff. The defence is, that some of the defendants are the field drivers of the town of Nantucket; that finding these sheep at large and without a keeper, on the common and unoccupied lands within that town, they, as such field drivers, with the other defendants, as their servants, took and impounded the sheep in the public pound; and the inquiry is, whether these sheep were rightfully or wrongfully at large on the lands where they were found and taken, and whether the acts of the defendants, in taking and impounding them, were rightful or wrongful.

The whole island of Nantucket was originally purchased, and afterwards owned and held by the purchasers in common. The proprietors have been in the habit, from quite an early period, of setting off portions of the common property

to be held in severalty, so that nearly all the lands thus originally held in common have been thus divided off. A small part only of these "dividend" or "allotted" lands, as they are called, are fenced. They are open and unenclosed. From these lands the sheep in question were taken by the defendants.

It appears ·by the records of the proprietors of the unenclosed lands, that the plaintiff was a considerable owner and proprietor of these lands. By an act of the legislature approved March 23d, 1847, entitled "An act concerning the common lands, in the island of Nantucket," it was enacted, that "the occupant, or owner, of unenclosed lands on the island of Nantucket, when used only for depasturing, shall not be required to pay for any partition fences standing on the line between the same land and the land of the enclosure of any other occupant or owner." By another act, approved April 22d, 1847, entitled "An act concerning the unenclosed lands in the island of Nantucket," it was enacted, that "the proprietors and owners of the unenclosed lands in the island of Nantucket, held in severalty, so long as the same shall remain unenclosed, may hold regular meetings, from time to time, for the purpose of managing their interests and concerns in such lands, and shall have all the powers, and be subject to all the duties and liabilities, given and imposed in the forty-third chapter of the revised statutes, in reference to general fields, except the power to enclose said lands by a common fence."

This act, it must be remarked, does not extend to the commonwealth, at large, but has reference exclusively to the unenclosed lands in Nantucket. The legislature, acting with especial reference to the unenclosed lands in Nantucket, acted undoubtedly with full knowledge of the situation of these lands, and the peculiar manner in which portions of the land originally held by the proprietors in common had been from time to time laid out or set off to classes of the proprietors. The terms in the act, therefore, "unenclosed lands in the island of Nantucket, held in severalty," must undoubtedly

refer to lands thus divided off and held by classes of proprietors, severed from the land still held in common by the general proprietary. In short, the act directly applies to the lands, from which the plaintiff's sheep were taken; otherwise it would apply to nothing, and be unmeaning and useless.

The act thus applying to these lands, the simple question is, whether its effect, as to the rights of proprietors, is to permit their sheep to run at large upon their lands. The act very clearly and fully takes these lands out of the operation of the twenty-second section of the nineteenth chapter of the revised statutes, upon which the defendants rely, and which authorizes every field driver to take up sheep going at large, on common and unimproved lands, and not under the care of a keeper; and brings these lands wholly and exclusively within the operation of the forty-third chapter of the revised statutes, in reference to general fields, except the power to enclose their lands by a common fence.

The plaintiff, therefore, and the other owners of lands from which the sheep in question were taken, have all the rights and powers, which the proprietors of general fields have by the forty-third chapter of the revised statutes, except as to enclosing by a common fence. The proprietors of general fields have power to hold regular meetings, from time to time, for the purpose of managing their common concerns, to choose field drivers and other officers, and adopt such rules as to pasturing their lands, as they shall think just and equitable, and for the general good. By the act of the 22d of April, 1847, the proprietors of the lands from which these sheep were taken have the same power to make regulations as to pasturing their lands, and to appoint field drivers and other officers. Accordingly, this plaintiff and the other proprietors had organized in pursuance of this last mentioned act, held their meetings, chosen their officers, and adopted their regulations; and the plaintiff's sheep were rightfully and lawfully upon the lands, by virtue of and under the protection of these regulations. Under these circumstances, the acts of the defendants, in taking and impounding the plaintiff's

sheep, were without lawful authority, and this action is well maintained on the part of the plaintiff.

According to the agreement of the parties, therefore, the defendants must be defaulted, and an assessor appointed to assess the damages.